# RICHARD LEE SNEAD *v.* STATE OF MARYLAND

[No. 18, September Term, 1979.]

*Decided October 1, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

## I

It is now clear that an accused in a criminal prosecution has two independent constitutional rights with regard to the management of his defense. He has both the right to have the assistance of counsel and the right to defend *pro se.* The first is guaranteed by the Sixth and Fourteenth Amendments to

the federal constitution and emerged as a clear constitutional rule from a series of cases decided by the Supreme Court of the United States over the last 50 years. *See, e.g., Argersinger v. Hamlin,* 407 U.S. 25, 92 S. Ct. 2006 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963); *Powell v. Alabama,* 287 U.S. 45, 53 S. Ct. 55 (1932). The second was announced in *Faretta v. California,* 422 U.S. 806, 95 S. Ct. 2525 (1975). Its roots are in

> a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.
>
> This consensus is soundly premised. The right to self-representation finds support in the structure of the Sixth Amendment, as well as in the English and colonial jurisprudence from which the Amendment emerged. [422 U.S. at 817-832.[1]]

Although *Faretta* held that self-representation was an independent constitutional right in criminal prosecutions,[2] it left unresolved certain procedural matters, having no occasion to address, on the facts of the case, the many serious practical questions with respect to implementing the right at trial. Mr. Justice Blackmun, in his dissent, expressed the fear "that the right to self-representation constitutionalized [by the majority] frequently will cause procedural confusion

---

1. The question in Faretta v. California, 422 U.S. 806, 95 S. Ct. 2525 (1975) was "whether a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. Stated another way, the question is whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." 422 U.S. at 807. The Court, by a six to three majority, concluded that a state may not constitutionally do so. *Id.*

2. The Court said: "Although not stated in the [Sixth] Amendment in so many words, the right to self-representation — to make one's own defense personally — is . . . necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta,* 422 U.S. at 819-820. It noted: "Our concern is with an *independent* right of self-representation. We do not suggest that this right arises mechanically from a defendant's power to waive the right to assistance of counsel. . . . On the contrary, the right must be independently found in the structure and history of the constitutional text." *Id.* at 819, n. 15.

without advancing any significant strategic interest of the defendant." 422 U.S. at 846. He noted some of the host of procedural problems that he suspected the court's decision would visit upon trial courts in the future. *Id.* at 852. Some of the problems he anticipated surface in the case before us.

## II

We granted Richard Lee Snead's petition for a writ of certiorari which presented the question whether Snead was "denied his Sixth Amendment right of self-representation" and the State's cross-petition which asked us to determine, in the event we found that Snead was denied the right to represent himself, whether the error was harmless. The Court of Special Appeals had held in an unreported opinion that the right to self-representation had not been denied and had affirmed the judgments of the Circuit Court for Worcester County entered upon Snead's convictions by a jury of robbery with a deadly weapon, grand larceny and assault with intent to rob.

We give a compendium of the facts pertinent to the issues. On 22 March 1978 trial was set for 12 April. On 11 April Snead filed a "Motion for Continuance" predicated upon an allegation of his ill health. When the case came on for trial the next day, the motion was considered before trial began. Snead pursued his allegation that he was ill, and, after discussion by the court, the defendant and counsel, the court found no cause to postpone the trial for reason of illness. Its denial of the motion on that ground is not now contested. In discussing the motion with the court, Snead expressed dissatisfaction with his attorney, Thomas C. Groton, a public defender assigned to represent him. He said: "I feel as though that I would like to get a delay in this case to get my nephew and my family time to get another attorney. From my understanding, Mr. Groton, the way he is talking, I am guilty before I even come in the courtroom." The court commented: "Well, now, the Court knows Mr. Groton very well. He is well qualified. He does not have any such preconception. . . . He has been your attorney since February 27, 1978. You have had plenty of time to get other counsel." Snead disagreed: "I

haven't had plenty of time. I have only seen him twice. My family is going to get together and get me some attorneys. That is why I would like to get this case postponed. I done 22 years out of my life for a crime I didn't do. So I feel like I don't get justice without my own attorney here." The court told Snead that he could not get a delay — "the motion to continue [the trial] to give you time to get other counsel is denied." Snead persisted. He stated flatly: "I don't want Mr. Groton." The court replied: "You have got Mr. Groton." Snead was far from content. The transcript reads:

THE DEFENDANT: He told me every time he come to see me, he tell me I am guilty before I come in the courtroom. Why should I have a man — he feels that way, before I come into the courtroom.

THE COURT: Make your mind up Mr. Groton is going to represent you.

THE DEFENDANT: I can't get time for my people to get me no attorney?

THE COURT: No, sir.

THE DEFENDANT: I don't want no attorney then.

THE COURT: Well, I am going to appoint him to represent you. He has been in the case. He is very competent. He is capable of representing you.

THE DEFENDANT: Well, he is competent to your understanding, I feel that, but the way he tells me he is not competent to my understanding.

THE COURT: Well —

THE DEFENDANT: The last attorney the State appointed me —

THE COURT: I made the ruling, Mr. Snead. Mr. Groton is going to stay in the case.

THE DEFENDANT: I don't have to accept him, Your Honor.

THE COURT: Yes, you do. You have got him.

At the close of the State's case, defense counsel asked Snead if he desired to call any witnesses. Snead suggested one but upon reflection agreed with defense counsel's belief that it would not be in Snead's best interest to have that witness testify. Snead elected not to testify in his own behalf.

## III

The Court of Special Appeals held that Snead was not unconstitutionally denied the right of self-representation because he failed to assert that right. In the intermediate court's view, he "gave no clear indication to the trial judge that he truly wanted to defend himself." As it construed the discussion on the issue, Snead "never expressly stated that he wanted to represent himself," and such a desire, the court opined, could not be inferred under the circumstances. It concluded that Snead's "statements regarding his desire not to have an attorney were no more than vague and petulant utterances, falling far short of a clear and unequivocal assertion of his right to self-representation." "If anything is clear from [Snead's] statements to the judge," the court observed, "it is that he, in fact, did *not* want to represent himself, but instead wanted an attorney of his own choosing."

One of the procedural problems to be determined is how the right to self-representation must be asserted. This question presented no problem in *Faretta.* There, "weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835. The Court enunciated no guidelines as to what minimum "declaration" was sufficient to constitute an assertion of the right, apparently because the steps taken by Faretta exceeded by a wide margin any minimum declaration which the Court may have had in mind. As we see it, such a declaration serves to alert the trial judge that further inquiry may be necessary. Therefore, any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient.

When the defendant so indicates a desire to defend *pro se,*

the court must, by appropriate inquiry, determine whether he "truly wants to do so." *Faretta,* 422 U.S. at 817. This inquiry has two phases. First, the court should ascertain whether the defendant "clearly and unequivocally" wants to defend himself. If a defendant makes known to the court, admitting of no doubt or misunderstanding, that he desires to represent himself, the right to do so has been properly asserted.

Once the defendant has clearly and unequivocally declared his desire to proceed *pro se,* the second phase of the inquiry is triggered. Certain factors guide this phase. "The right to defend is personal. . . . And although [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' " 422 U.S. at 834, quoting *Illinois v. Allen,* 397 U.S. 337, 350-351, 90 S. Ct. 1057 (1970) (Brennan, J., concurring). "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Faretta,* 422 U.S. at 821.[3] "To force a lawyer on a defendant can only lead him to believe that the law contrives against him." *Id.* at 834. The acquiescence by the accused must be in light of the relinquishment of many of the traditional benefits associated with the right to counsel, because these benefits are relinquished, as a purely factual matter, when an accused manages his own defense. *Id.* at 835. Therefore, the Court said, citing *Johnson v. Zerbst,* 304 U.S. 458, 464-465, 58 S. Ct. 1019 (1938), "in order to represent himself, the accused must 'knowingly and intelligently' forgo these relinquished benefits." *Id.* Again, the Court did not set out a specific procedure.[4] But it indicated some guidelines:

> Although a defendant need not himself have the skill

---

3. The Court was careful to point out that "when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. . . . This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative." *Faretta,* 422 U.S. at 820-821.

4. *Faretta* was a paragon of *pro se* defendants. "The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Faretta,* 422 U.S. at 835.

and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [*Faretta,* 422 U.S. at 835, quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236 (1942).]

Further, technical legal knowledge, as such, is not relevant to an assessment of an accused's knowing exercise of the right to defend himself. 422 U.S. at 836.

In *State v. Renshaw,* 276 Md. 259, 347 A.2d 219 (1975) we recognized, on the authority of *Faretta,* the constitutional right to proceed without counsel. We conditioned the exercise of the right upon an effective waiver of the right to counsel:

To be sure, a criminal defendant does have a constitutional right to proceed without counsel if he intelligently and competently waives his right to counsel. . . . But the standard for waiver of the right to counsel remains unchanged. . . . The record must show that the defendant is competent to waive the right to counsel,[5] and that he knowingly and intelligently has done so after being made aware of the advantages and disadvantages of self-representation.[6] [*Id.* at 267.]

---

5. We noted in State v. Renshaw, 276 Md. 259, 267, n. 3, that competency to stand trial and competency to make a knowing and intelligent waiver of the right to counsel are not necessarily the same.

6. There has been suggestion to the contrary:

While the "knowingly and intelligently" standard generally represents the conditions necessary for *waiving* a right, the *Faretta* Court's use of that standard does not indicate that *assertion* of the right to self-representation is conditioned on waiver of the right to counsel. On the contrary, the fact that the Court found self-representation to be an independent and not a correlative sixth amendment right would seem to indicate an opposite conclusion. But since the defendant in *Faretta* at no time attempted to exercise his *pro se* right and right to counsel simultaneously, the question whether self-representation is conditioned on a waiver of the right to counsel was not properly raised. [13 Am.Crim.L.Rev. 335, 354 (1975).]

The *Faretta* opinions provoked a wealth of comment. Critical analyses

We went further. We said: "When the accused cannot waive the right to counsel, or has not effectively done so, the court must take steps to insure that the accused is represented by counsel even if he professes his unwillingness to have a lawyer." *Id.* at 268.

Since, in this jurisdiction, the assertion of the right to defend *pro se* is conditioned upon the waiver of the right to counsel, the course of the trial court's inquiry upon a clear and unequivocal assertion of the right has been charted. Maryland has overcome the temptation of expediency with regard to waiver standards of the right to counsel. *See* 7 Colum. Human Rights L. Rev. 553, 571 (1976). Rule 723 of the Maryland Rules of Procedure implements the constitutional mandates for waiver of counsel, and its provisions are mandatory. *Thompson v. State,* 284 Md. 113, 123, 394 A.2d 1190 (1978); *see State v. Bryan,* 284 Md. 152, 395 A.2d 475 (1978). Section c of the Rule details the inquiry to be made "[w]hen a defendant indicates a desire or inclination to waive counsel...." Thus, it is invoked when a defendant has properly asserted his right to defend *pro se* and governs phase two of the inquiry required to determine whether a defendant "truly" desires to manage his own defense. In short, a defendant in a criminal prosecution who has properly asserted the right to defend himself and has, under our procedures, effectively waived the assistance of counsel, has the right to self-representation absolutely.

## IV

In the case at hand, the trial judge's insistence that the trial proceed with the representation of Snead by the assigned

included discussion of the procedural and practical difficulties in implementing the right. *See:* Chused, *Faretta and the Personal Defense: The Role of a Represented Defendant in Trial Tactics,* 65 Calif.L.Rev. 636 (1977); Schwab, *How Far Faretta: Creating Implied Constitutional Rights,* 6 San Fern.V.L.Rev. 1 (1977); 61 A.B.A.J. 1120 (1975); 40 Albany L.Rev. 423 (1976); 29 Ark.L.Rev. 546 (1976); 7 Colum. Human Rights L.Rev. 553 (1976); 61 Cornell L.Rev. 1019 (1976); 6 Cumberland L.Rev. 703 (1976); 25 DePaul L.Rev. 774 (1976); 4 Hofstra L.Rev. 449 (1976); 54 N.C.L.Rev. 705 (1976); 37 Ohio St.L.Rev. 220 (1976); 29 Sw.L.J. 971 (1975); 11 Tulsa L.J. 365 (1976); 37 U.Pitt.L.Rev. 403 (1975).

public defender was without any regard whatsoever to the constitutional right of self-representation. If the judge was aware of the *Faretta* holding, he simply made no effort to apply it. Snead's statement that "I don't want no attorney then," was, in the circumstances, a declaration sufficient to require an inquiry to ascertain whether he truly wanted to represent himself. Neither phase of that inquiry was pursued. The first phase would have determined whether Snead clearly and unequivocally asserted the right. If he did, the second phase would have been triggered and would have resolved whether the right to assistance of counsel was competently and intelligently waived by him. Upon an affirmative answer to both questions Snead would have been entitled to manage his own defense. A negative answer to either question would have precluded the entitlement of the right to self-representation.

It is the failure of the trial judge to pursue the inquiry essential to a determination of the entitlement of the right to proceed without counsel that necessitates reversal of the judgment. Without such inquiry and determinations thereon, there is no way to ascertain on appellate review whether it was proper for the court to refuse to permit Snead to defend *pro se* and to force a lawyer upon him. In other words, as the case stands, the propriety of the refusal with respect to the merits of entitlement to the right of self-representation, is not properly before us. On retrial, if Snead again indicates that he wants to represent himself, the court shall follow the procedures and make the determination in accordance with this opinion.

## V

The State posits that Snead did not properly assert his Sixth Amendment right to self-representation. It argues:

> The request was equivocal in that he stated he did not think he could receive justice without his attorney. It was untimely because it was raised orally on the morning of trial. It was frivolous in that it was merely a tactic designed to delay the trial proceedings.

These were all matters which should have been determined by the trial court upon an appropriate inquiry. As we have seen, there was no such inquiry. In other words, these matters were not tried and decided below and are not to be resolved for the first time on appellate review by either this Court or the Court of Special Appeals. Md. Rules 885 and 1085.

With regard to the timeliness of a request to proceed without counsel, we have pointed out that the right to self-representation is conditioned upon an effective waiver of counsel. An effective waiver of counsel is to be determined under Rule 723 and that Rule contains no provision as to the time an indication of a desire or inclination to waive counsel must be made.

The State would have us hold that if the refusal to permit Snead to proceed without counsel was error, the error was harmless. As we have indicated, we do not reach the merits of the issue whether the refusal to permit Snead to proceed without counsel was error because the foundation necessary for a ruling thereon was not laid, and it was the failure to lay the foundation by appropriate inquiry which necessitates reversal of the judgments. It is manifest that the failure to conduct a properly invoked inquiry which is necessary for a resolution of whether an accused is entitled to the right to proceed *pro se,* may not in any event be harmless.[7]

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with direction to reverse the judgments of the Circuit Court for Worcester County and remand for a new trial; costs are not reallocated as part of the judgments of this Court pursuant to Maryland Rule 882 f.*

---

7. Among the procedural problems listed but unanswered by Mr. Justice Blackmun in his dissenting opinion were "How soon in the criminal proceeding must a defendant decide between proceeding by counsel or *pro se?*" and "May a violation of the right to self-representation ever be harmless

error?" *Faretta,* 422 U.S. at 852 (Blackmun, J., dissenting). These problems and the others designated by Mr. Justice Blackmun, are discussed in 7 Colum. Human Rights L.Rev. 553 (1976).

On the facts of the case we here decide, the question whether a defendant may assert the right to self-representation after the trial has begun is not before us, and we do not consider it. Whether a defendant "must be allowed to switch in mid-trial" was one of the procedural problems posed by Mr. Justice Blackmun in his *Faretta* dissent.