THOMAS MICHAEL BROWN AND CHARLES WILLIAM
SUMMERS v. STATE OF MARYLAND

[No. 523, September Term, 1981.]

*Decided February 4, 1982.*

The cause was argued before GILBERT, C. J., and MOORE
and MacDANIEL, JJ.

*Clarence W. Sharp, Assigned Public Defender,* for appellants.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, J. Donald Braden, State's Attorney for Queen Anne's County,* and *Michael Foster, Assistant State's Attorney for Queen Anne's County,* on the brief, for appellee.

MACDANIEL, J., delivered the opinion of the Court.

Thomas Michael Brown and Charles William Summers, appellants, were convicted by a jury in the Circuit Court for Queen Anne's County of (1) breaking with an intent to steal property valued at over $300; (2) malicious destruction of property, and (3) rogue and vagabond. Summers was sentenced to nine years imprisonment for the breaking conviction, with concurrent one year sentences for the malicious destruction and rogue and vagabond convictions. Brown was sentenced to eight years on the breaking conviction, with concurrent one year sentences for the malicious destruction and rogue and vagabond convictions.

Appellant Summers contends the trial court committed reversible error by denying his request for a postponement.

Both appellants contend:

1. The evidence was insufficient to sustain all convictions.

2. The offenses of malicious destruction of property and rogue and vagabond merge into the offense of breaking with intent to steal property valued at over $300.

3. They were denied their constitutional right to counsel when the trial court forced them to proceed with the trial without the aid of counsel.

We find all contentions without merit and shall affirm.

The facts are uncomplicated. The manager of an Exxon station and repair shop in Queen Anne's County, concerned over recent burglaries returned to the station — after it had been secured and closed for the day — with the express purpose of preventing any further burglaries. He arrived

about 10:00 p.m. and got into a parked car where he could observe the premises. At approximately 12:15 a.m., he observed two men, one carrying a five-gallon bucket of water, come to the front of the station from the restrooms. One of the men hid behind a car while the other climbed on a pile of junk under a window, looked inside, and then broke the window. As that man was reaching inside the broken window, the manager, armed with a rifle, apprehended the two men. A state trooper arrived shortly thereafter and placed the two men, identified as the appellants herein, under arrest. Appellants explained their actions to the state trooper as necessary for them "to get another container to put water in for their disabled car." The trooper ascertained that an alleged disabled vehicle containing two passengers was parked about one-quarter of a mile from the station.

We shall first address appellant Summers' contention that the lower court erred in refusing to grant a postponement. Two motions for continuance had been previously granted to Summers (February 21, 1980 and April 28, 1980), when, on July 8, 1980, Summers again requested a postponement of the trial scheduled for July 9, 1980. This request was based upon the fact that Summers' mother was in a coma and expected to die. When considering a motion for postponement, the trial court is governed by Maryland Rule 746 (b) which states:

> "Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change in trial date." [1]

Appellant argues that the condition of his mother constituted "extraordinary cause" necessitating a postponement, a denial of which constituted a clear abuse of the trial court's discretion.

---

1. Formerly Maryland Rule 740, Art. 27, § 591. On July 3, 1980 "good cause" was substituted for "extraordinary cause." Appellant having had his first appearance prior to July 3, 1980, is governed by the "extraordinary cause" standard.

The trial court ascertained that the doctor could not predict how long Summers' mother would live, the case had been postponed twice before, the expected trial time was one day, and decided that if she died before trial a postponement would be granted. Based upon these facts we cannot say that the trial court's denial of the requested postponement amounted to a clear abuse of discretion. *State v. Hicks,* 285 Md. 310 (1979); *Chance v. State,* 45 Md. App. 521 (1980).

We shall now address the three contentions made jointly by appellants.

## I. *Sufficiency*

Appellants contend that the proof of breaking with the intent to steal goods of the value of over $300 was insufficient to convict because of a lack of proof of felonious intent. The intent here was proven by the circumstances — climbing upon a pile of junk to reach and break a window in the middle of the night at a closed gasoline station containing goods inside in excess of the value of $300. It is not necessary that goods actually be taken to prove the intent to steal. *Herbert v. State,* 31 Md. App. 48 (1976); *Sparkman v. State,* 3 Md. App. 527 (1968). Appellants also argue that their explanation that "they were merely attempting to obtain a container from within the building to obtain water for their disabled car," was sufficient to override the finding of felonious intent needed for conviction. This is totally without merit. Appellants ignore the evidence that at the time of their apprehension they were already carrying a five-gallon container filled with water. Without appellants' explanation the evidence was sufficient to convict; with the explanation the trier of fact had a right to disbelieve and so convict. *Brown v. State,* 39 Md. App. 497, 506 (1978).

Regarding the rogue and vagabond convictions, appellants likewise assert that the State failed to prove the requisite intent. This argument is specious. The evidence which supported the intent for the breaking also amply supported the intent for the rogue and vagabond convictions.

Appellants next assert a failure by the State to produce sufficient evidence to prove a willful or malicious intent to

destroy, injure or molest property to support their convictions for malicious destruction of property. Here, appellants did break the window. They claim otherwise, but the jury chose to disbelieve their explanation and found that their intent was to break the window to steal. This evidence was sufficient to support the convictions. *Spears v. State,* 38 Md. App. 700 (1978).

## II. *Merger*

Appellants maintain that the offenses of malicious destruction of property and rogue and vagabond merge with the offense of breaking with intent to steal property valued over $300.

In *Rose v. State,* 37 Md. App. 388, 393-94 (1977), *cert. denied,* 281 Md. 743 (1977), this Court said:

> "While we have often refused to decide a question of merger which has not been raised or decided in the trial court in cases in which concurrent terms were imposed, we have not declined to consider such questions in cases in which consecutive terms were imposed." (Footnotes omitted.)

Here, the terms imposed were concurrent. Since this issue was not raised below, it is not properly before us. Maryland Rule 1085; *Johnson v. State,* 38 Md. App. 306 (1977); *Colbert v. State,* 18 Md. App. 632 (1973); *Moore v. State,* 15 Md. App. 396 (1972).

## III. *Waiver of Right to Counsel*

It is well established that a defendant in a criminal prosecution has two independent constitutional rights with regard to the management of his defense.

The right to the assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution. *See, e.g., Argersinger v. Hamlin,* 407 U.S. 25 (1972); *Gideon v. Wainwright,* 372 U.S. 335 (1963).

A defendant in a criminal case also has a constitutional right to proceed without counsel, so long as certain

well-defined procedural safeguards are complied with. *See Faretta v. California,* 422 U.S. 806 (1975).

Whenever a defendant proceeds without the assistance of counsel, either because he has affirmatively waived his right to counsel or has waived his right to counsel by conduct, there must be an appropriate inquiry on the record in open court, under the procedural safeguards required by Maryland Rule 723.

Maryland Rule 723 states:

"a. *Appearance of Defendant.*

A defendant shall appear in person at the time and place specified in the summons or other writ issued pursuant to Rule 720 (Original Summons, Warrant and Notice to Appear), unless his counsel enters an appearance for him in writing on or before the time. If the defendant fails to appear personally or by counsel, the court may direct the clerk to issue a warrant for his arrest or to reissue the summons for personal service on the defendant.

b. *Appearance Without Counsel.*

When a defendant appears pursuant to section a of this Rule and is not represented by counsel, the court shall:

1. Make certain that the defendant has received or receives a copy of the charging document;

2. Advise the defendant that he has a right to be represented by counsel at every stage of the proceedings;

3. Advise the defendant of the matters required by subsections 1, 2 and 3 of section c of this Rule;

4. Advise the defendant who desires counsel that he must retain the services of counsel and have counsel enter an appearance for him within 15 days;

5. Advise the defendant that if he finds he is financially unable to retain the service of private counsel, he should apply to the Public Defender as

soon as possible for a determination of his eligibility to have counsel provided for him by the Public Defender;

6. Advise the defendant that if the Public Defender declines to provide representation, the defendant should immediately notify the clerk of the court so that the court can determine whether it should appoint counsel pursuant to Article 27A, section 6 (f), of the Maryland Code;

7. Advise the defendant that if counsel does not enter an appearance within 15 days, a plea of not guilty will be entered pursuant to section b 3 of Rule 731 (Pleas), and the defendant's case will be scheduled for trial. The court shall also advise the defendant that if he appears for trial without counsel, the court could determine that he has waived his right to counsel by neglecting or refusing to retain counsel or to make timely application to the Public Defender for counsel, and in that event, the case would proceed with defendant unrepresented by counsel.

c. *Waiver Inquiry.*

When a defendant indicates a desire or inclination to waive counsel, the court may not accept the waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision, and fully comprehends:

1. The nature of the charges against him, any lesser included offenses, and the range of allowable penalties, including mandatory and minimum penalties, if any;

2. That counsel can render important assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof, and in preparing for and representing him at trial;

3. That even if the defendant intends to plead guilty, counsel may be of substantial assistance in developing and presenting information which could affect the sentence or other disposition;

4. That if the defendant is found to be financially unable to retain private counsel, the Public Defender or the court would, if the defendant wishes, provide counsel to represent him.

d. *Procedure After Waiver Inquiry.*

1. If the court accepts the waiver of counsel pursuant to section c of this Rule, it shall direct that a trial date be scheduled.

2. If the defendant appears in court without counsel, at any proceeding after his appearance pursuant to section a of this Rule, the court may not proceed before determining whether the defendant at that time desires to waive counsel, or has waived counsel, either affirmatively or by neglecting or refusing to obtain counsel.

e. *Record of Compliance.*

The advice of the court given pursuant to sections b and c of this Rule and the finding that the defendant waived counsel pursuant to sections c and d of this Rule shall be made on the record in open court. The docket entries shall affirmatively show compliance with this Rule."

In the case *sub judice,* appellants appeared at their arraignment on October 11, 1979, without counsel and were properly advised at that time of their rights under section b of Rule 723. Sometime after their arraignment, the public defender entered his appearance on behalf of the appellants and the case was set for trial on February 21, 1980. On the day of trial, appellant Brown indicated to the court that he did not wish to proceed with trial in the absence of appellant Summers.[2] The court granted the postponement and

---

**2.** Summers was at that time incarcerated in the Baltimore City jail.

rescheduled the trial for April 28, 1980. Appellants appeared for trial with the Public Defender. This time a postponement was requested to allow appellants to retain private counsel. The trial court granted the postponement and cautioned the appellants:

"THE COURT: All right, gentlemen, the case will be continued until July 9th at ten o'clock in the morning. That should give you adequate time to get an attorney, and the Court is going to advise you again that you are entitled to be represented by an attorney of your choice, and you have certain rights — in other words, what I'm doing is repeating what the court advised you when you appeared before Judge Everngam, that you have a right to be represented by a private lawyer, and if you can't afford a private lawyer, and it's concievable [sic] to the Court that you might not be able to raise all the funds to get a private lawyer, then you should promptly return to the public defender and reapply to the public defender.

. . . .

As I have said before, an attorney can render important assistance to you in determining whether there are defenses to the charges or circumstances in mitigation thereof and preparing and representing you at the trial, and even if you decided later to plead guilty, an attorney may be of substantial assistance in the sentence or other disposition.

Of course, as I have indicated before, if you still find you are financially unable to retain a private lawyer, the public defender or court would, if you desire and wish, provide an attorney to represent you.

Now, if there is to be any change in your address, you must promptly notify the clerk of this court, and you go back to the public defender if you can't get a private lawyer because of financial reasons,

and if he refuses or declines to appoint another lawyer to represent you, then you must promptly notify the clerk of this court so the court can decide whether to appoint a lawyer to represent you. Do you understand what I'm saying, gentlemen?

MR. SUMMERS: Yes, sir.

MR. BROWN: Yes, sir.

THE COURT: This, of course, is all given in open court in the presence of the accused, and the docket entries should affirmatively show that this complies with Maryland Rule 723[a].

*I want you to fully understand that if you come into court on the next trial date or any other date for some reason or another and you don't have a private lawyer or public defender to represent you, you are going to have to be prepared to represent yourself at the trial, is that clear?*

MR. BROWN: Yes.

MR. SUMMERS: Yes." (Emphasis added.)

Appellants admit that they were advised by the court of the procedural safeguards contained in Rule 723 and the possible ramifications that could befall them under § b (7) (by neglecting or refusing to retain counsel.)

Appellant Summers appeared before the court without counsel on July 8, 1980, and requested a postponement, which was denied. He advised the court at that time that his attorney would be present the following day for trial.

On July 9, 1980, both appellants appeared for trial without counsel and the following colloquy took place:

"THE COURT: The Court further notes that they have appeared here today without the benefit of an attorney and before we proceed the Court should make inquiry as to why they come into court today without having an attorney to represent them.

Let me see what that rule is 723[d]. It provides if

the defendant appears in court without counsel at any proceeding after his first appearance before the court, the court may not proceed before determining whether the defendant at that time desires to waive counsel or has counsel or has waived counsel either affirmatively or by neglecting or refusing to obtain an attorney.

You do appear, gentlemen, without counsel. You want to explain to the court why, particularly in light of the fact we continued the case on April 28th because you asked or said you wanted to get private counsel.

DEFENDANT BROWN: Why I wanted private attorney, on February 17th I come to court and Mr. Summers was in custody in Baltimore City.

THE COURT: Yes, I remember that.

DEFENDANT BROWN: Mr. Skipp told me wasn't enough jurors to hear the case, couldn't be, I had to give 180 days right up for me to get a postponement. He wasn't no kind of lawyer.

. . . .

THE COURT: You want to explain to me why you do not have an attorney with you today?

DEFENDANT BROWN: I lost my job because they found out about my record. Same reason I lost my other job.

THE COURT: When did you lose your job?

DEFENDANT BROWN: About three months — April 28th, I was working about two weeks after that. I have been looking and looking for jobs.

THE COURT: Why didn't you at that point go to the public defender and ask him to appoint a lawyer to represent you?

DEFENDANT BROWN: I didn't know nothing about that.

THE COURT: Mr. Summers —

DEFENDANT BROWN: Mr. Brown. I did not have the number of the one here.

THE COURT: That is very difficult for the court to accept, particularly in light of the fact you were advised of your right to have a public defender. You did in fact make application to the public defender and the public defender appointed Mr. Skipp originally to represent you. You must have been a person that didn't have sufficient funds to get a lawyer or they wouldn't have appointed you one.

So, to say you don't know that you had a right to go back and ask for a public defender to appoint a lawyer because you lost your job, I just can't buy that.

Is that the reason why you say now you come without a lawyer?

DEFENDANT BROWN: Yes, sir.

THE COURT: Well, I'm satisfied that Mr. Brown was fully aware of his right to an attorney. The case was postponed at his request in order that he could obtain private counsel, and if he could not then financially obtain one, he could apply to the public defender for appointment of a lawyer. He didn't see fit to do that. I'm satisfied that he has either affirmatively or by neglecting to obtain counsel waived his right to have counsel represent him here today.

Now, Mr. Summers, you want to explain why you don't have an attorney?

DEFENDANT SUMMERS: I've only asked for postponement twice; one, first time mentioned for the purpose of getting private attorney.

THE COURT: That was on the day of the trial.

DEFENDANT SUMMERS: That's right.

THE COURT: According to the docket entries that was the second trial date because the first one you didn't appear because you were apparently confined in Baltimore City Jail.

DEFENDANT SUMMERS: Right.

Well, since the original postponement I had asked for, I had my job, like I told you, I broke my hands

up, this one was broke three days after my court appearance here, and it is starting to heal, now I broke this one. You saw yesterday I had a cast on. I took it off this morning, sometime this morning.

THE COURT: You haven't had a job since April?

DEFENDANT SUMMERS: No. I'm saying this contributes to it, that, and I've been back and forth numerous times to the hospital with my sister — sister had a double operation, my mother is on her dying bed right now. I just haven't had a chance.

I take care of four children and I'm trying to keep my stepfather from having a heart attack. I'm a human being, I realize, you know, I've never asked, like yesterday I sat here all day yesterday to walk in and walk out and to come in here now in the mind I'm in.

I know you have been lenient and I know you have been fair. I'm not saying that. I have worked the whole time. I have worked when this charge was supposed to took place, I had a job, Your Honor.

THE COURT: I just wanted to know why you don't have a lawyer today?

(No response.)

DEFENDANT SUMMERS: I'm trying to explain to you. I worked off and on. I've been working. Every bit of money I've gotten it's been going in my family's mouths.

THE COURT: Well, then you might have qualified for the public defender, you did before.

DEFENDANT SUMMERS: I would rather walk in there dumbfounded with words than to have Stefan Skipp represent me.

THE COURT: Well, I don't know what your problem with Stefan is, and all I know he fights very hard for his clients, often gets them off.

Well, if you weren't financially able to get one, you knew you had a right to go to the public

defender because you have been to him before. You were qualified or he wouldn't have appointed Mr. Skipp to represent you. He apparently found you either didn't make enough money or didn't have enough assets to obtain a lawyer and he appointed one for you.

DEFENDANT SUMMERS: This is way before any type of postponement was even asked.

THE COURT: On April 28th you asked for a postponement to obtain private counsel. You were granted a postponement when all the State's witnesses were here and ready to go to trial. I think we had the jury present, I'm not sure about that.

As far as I'm concerned, he has affirmatively or neglected to obtain counsel and has waived his right to have counsel represent him on today."

Appellants concede that all the safeguards contained in Rule 723 were explained to them, but still maintain that there was an ineffective waiver of their right to counsel. They appear to base this contention on the fact that they never *affirmatively* chose to proceed without counsel but were forced to do so by the trial court. They overlook the fact that their conduct may be used to show a waiver.[3]

To bolster their argument, appellants claim that *State v. Renshaw,* 276 Md. 259 (1975) and *Snead v. State,* 286 Md. 122 (1979) are dispositive of the alleged "ineffective waiver." We disagree.

In *Renshaw, supra,* the defendant, on the day of trial, informed the court that he was dissatisfied with the counsel

---

3. In Howell v. State, 48 Md. App. 89 (1981), *cert. granted,* 290 Md. 716 (1981), at 108, we said:

"The appellant argues that the waiver provisions as spelled out federally by *Johnson v. Zerbst, supra,* and locally in Maryland Rule 719 c had not been complied with. Although by no means essential to our holding, we do not agree. *A defendant may indicate his choice by his actions as well as by his words* . . . The scenario, to be sure, was not garden-variety Rule 719 c, but, in the unique circumstances of this case, it was the functional equivalent." (Emphasis added.)

Maryland Rule 719 has since been changed to Maryland Rule 723.

assigned to the case. The trial court treated the defendant's expression of dissatisfaction with assigned counsel, his request for a change of counsel and his silence [4] as a waiver of the right to counsel and an election to proceed in proper person. In sum, the Court of Appeals determined that Renshaw had not waived his right to counsel because he had not made an unequivocal choice, but merely insisted on a different lawyer.

The Court of Appeals in *Snead, supra,* faced with a factual scenario similar to that of *Renshaw,* found that the trial court erred in not inquiring whether the defendant chose to waive his right to counsel after the defendant stated, "I don't want no attorney then." The Court of Appeals stated that when a defendant indicates a desire to defend *pro se,* the court must, by appropriate inquiry, determine whether he "truly wants to do so." It was the failure of the judge to pursue the inquiry essential to a determination of the entitlement of the right to proceed without counsel that necessitated reversal of the trial court.

*Renshaw* and *Snead, supra,* are inapposite to the present case. In *Renshaw,* the Court of Appeals determined that the court erred in not finding a waiver, where there was no showing on the record that the defendant was competent to waive counsel, knowingly and intelligently exercised his right to waive counsel, or knew the advantages or disadvantages of self-representation. In *Snead,* the error of the trial court was in failing to inquire whether the defendant wanted to proceed *pro se,* after advising the court that he did not want an attorney.

Here, if the trial court had at the April 28, 1980, hearing required appellants to proceed at that time with the trial, we would be faced with a *Renshaw* or *Snead* situation. That is not the case here — the trial court granted the postponement to allow appellants to obtain other counsel.

---

4. After the prospective jurors were brought in and the trial judge explained to appellee the procedure for selecting a jury, appellee stated, "Your Honor, I want to remain silent from here on out." Renshaw remained silent throughout the entire case.

We hold that under the unique circumstances of this case the appellants by their actions effectively waived their right to counsel.

Appellants final thrust in their quest to find reversible error centers on *Thompson v. State,* 284 Md. 113 (1978). In *Thompson,* the Court of Appeals at 126 said:

> "The inquiry required to be made and the test to be met under § c before the court may accept a waiver of counsel applies not only to a defendant's appearance pursuant to § a but also *to any proceeding at which he appears without counsel thereafter.* In such event, the court is prohibited from proceeding before determining whether the defendant *at that time* desires to waive counsel or has waived counsel. § d 2. By § e, there must be a record of compliance with respect to §§ b, c and d." (Emphasis in original. Footnote omitted.)

*Thompson* concerned a defendant, who after an appeal of a District Court conviction, appeared in the Circuit Court on several occasions without counsel. There was never any compliance with Rule 723 at any of these appearances. Also, Thompson was never advised of his right to have representation by the public defender. It was for these reasons that the conviction was reversed. The quoted section from *Thompson* relied on by appellants was at most *dicta* in that case. However, we find appellants' interpretation of that quoted portion to be in error.

We have found, and indeed appellants concede, that all their rights under Rule 723 §§ a, b, and c had properly been given prior to the date of trial. Section d (1) applies where there has been an acceptance by the court of an affirmative waiver of counsel; here a trial date is then set. Additional safeguards are required by § d (2). Naturally, if an affirmative waiver of counsel was accepted by the court and a trial date set pursuant to § d (1), the defendant would appear in court on that trial date without an attorney. Under § d (2) the trial court must ascertain that there has been a waiver; this does not require a restating of the rights under § c. If

the waiver was by conduct — *i.e.,* "neglecting or refusing to obtain counsel" — d (2) only requires that the trial court find that the conduct amounted to a waiver. This would not require a restating of the right under § c. To hold otherwise would be ludicrous. If, at this stage of the proceedings, the trial court was required to restate the rights under § c and then set a trial date, the defendant could appear the next time without counsel and the case would not proceed.

We hold that § d (2) requires the trial judge to determine whether *at that time* the defendant has "waived counsel, either affirmatively or by neglecting or refusing to obtain counsel." If all the rights required by §§ a, b, and c previously have been given, in determining that a waiver of counsel has occurred (either affirmatively or by conduct), the trial court is not mandated by § d (2) to restate the rights under § c on the day of the trial.

*Judgments affirmed.*
*Appellants to pay the costs.*