506 A.2d 240

**Brodie CROWDER**

v.

**STATE of Maryland.**

**No. 96, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 27, 1986.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Attorney General, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall hold in this case that the Court of Special Appeals erred in its determination that appellant Brodie Crowder had "by his own conduct ... waived his right to counsel." Accordingly, we shall reverse the judgment of the Court of Special Appeals in *Crowder v. State* (Unreported, No. 1040, September Term, 1984, decided April 19, 1985).

Crowder was convicted of burglary in the Circuit Court for Baltimore County and sentenced to a term of twenty-five years imprisonment without the possibility of parole. In affirming that judgment the Court of Special Appeals said:

"The record shows that appellant had appeared in court on May 16, 1983, and June 30, 1983. On both occasions his request for a postponement was in order that he might obtain counsel. He was also advised of his right to be represented by the office of the public defender. Nevertheless, he appeared for trial on September 26, 1983, and insisted that Morris Kaplan was going to repre-

sent him. Kaplan represented the then co-defendant, Taylor, and could not represent appellant. The court (DeWaters, J.) determined that there was a conflict of interest on Kaplan's part and that Kaplan could not represent appellant. Judge DeWaters noted that appellant had on several prior occasions been advised to obtain an attorney, but had failed to do so. The court then deemed that he had waived his right to counsel.

"An accused is afforded an opportunity to employ counsel of his own choosing, *English v. State,* 8 Md.App. 330 [259 A.2d 822] (1969), or if he is indigent, to have an attorney appointed to represent him. Notwithstanding that right, an accused, through the use of postponements, cannot be allowed to manipulate the system in order to preclude the orderly administration of justice. Although Crowder asserts that he was forced to go to trial without an attorney, we think that by his own conduct he waived his right to counsel. *Brown v. State,* 50 Md.App. 651 [441 A.2d 354] (1982). He will not be permitted to manipulate the judicial system so as to delay the trial and then claim a denial of counsel."

We granted Crowder's petition for a writ of certiorari in order that we might address the important public issue here presented.

The Court of Special Appeals recognized in *Brown v. State,* 50 Md.App. 651, 441 A.2d 354 (1982), that one might by his conduct waive the right to counsel. In *Howell v. State,* 293 Md. 232, 241, 443 A.2d 103, 107 (1982), we said, "Under certain circumstances, the assertion of the right to counsel, if part of a strategy for delay, may be conduct that constitutes a waiver." (Citing cases.) *See also, Leonard v. State,* 302 Md. 111, 126, 486 A.2d 163, 170 (1985). The doctrine has been recognized in a number of cases. *See, e.g., United States v. Weninger,* 624 F.2d 163, 167 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States v. Gates,* 557 F.2d 1086, 1088 (5th Cir.1977), *cert. denied,* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978); *United States v. Terry,* 449 F.2d 727,

728 (5th Cir.1971); *Glenn v. United States,* 303 F.2d 536, 541 (5th Cir.1962); *United States v. Arlen,* 252 F.2d 491, 494–95 (2d Cir.1958); *Spevak v. United States,* 158 F.2d 594, 597 (4th Cir.1946), *cert. denied,* 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272 (1947); *People v. Guice,* 83 Ill.App.3d 914, 918, 38 Ill.Dec. 837, 840, 404 N.E.2d 261, 264 (1979), *cert. denied,* 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); *Commonwealth v. Jackson,* 376 Mass. 790, 796, 383 N.E.2d 835, 839 (1978); *Commonwealth v. Wentz,* 280 Pa.Super. 427, 434, 421 A.2d 796, 799–800 (1980), *appeal dismissed,* 495 Pa. 616, 435 A.2d 176 (1981); *State v. Jacobs,* 271 S.C. 126, 128, 245 S.E.2d 606, 608 (1978); *State v. Johnson,* 33 Wash.App. 15, 22–23, 651 P.2d 247, 252 (1982); *Keller v. State,* 75 Wis.2d 502, 509, 249 N.W.2d 773, 777 (1977). In *Arlen* the court said:

> "[W]here a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney. Such a waiver is similar in its consequences to an election made by an indigent defendant." 252 F.2d at 494–95.

No useful purpose would be served by a review of what has and has not been regarded by various courts as a waiver of the right of counsel by conduct because such cases are decided upon their own facts on a case by case basis. Hence, we turn to a review of the undisputed facts in this case.

A criminal information was filed against Crowder and two others on March 2, 1983. On March 21 he was brought before one of the judges of the Circuit Court for Baltimore County and advised of his rights under then Maryland Rules 723 and 731, pertaining to the right of counsel and pleas, respectively.[1] Notice of a trial date of May 16, 1983, was filed on April 6. Crowder appeared on May 16 with

---

1. Now Maryland Rules 4–215 and 4–242.

counsel whom he had paid. The attorney also represented Crowder's brother, a co-defendant. The judge concluded there was a conflict. Accordingly, at Crowder's request, a postponement was granted. Crowder waived his right to a speedy trial and his right under then Rule 746 pertaining to a trial date within 180 days.[2] The judge advised him to get counsel within fifteen days or to apply to the Public Defender's office.

On May 18 notice of a trial date of June 30 was filed. On June 30, Crowder appeared before the administrative judge for the purpose of requesting a postponement. Morris Kaplan, Esq., who was present on behalf of then co-defendant Michael Taylor and requesting a postponement of his own, spoke on behalf of Crowder "in the goodness of [his] heart ...." He proffered that Crowder, on the previous occasion that he had been before the court, had been

"advised by Judge Raine, I believe, to the effect that his counsel—he had a lawyer, Mr. Cocoros at the time, that his lawyer could not represent a third co-defendant [*i.e.*, Carl Crowder] and Mr. Crowder because it was a conflict of interest, and he had been assured by Mr. Cocoros that another lawyer would be obtained for him, and, as of this date, he has not heard from Mr. Cocoros."

Crowder said further:

"[T]he Judge ruled that any money I had gave Mr. Cocoros, for him to give it back, but since he had represented me, all the money I had gave him, he used it as his fee for the previous arraignment, right, and, so, what happened is that he told me that he would get someone to represent me, and, well, when I came here, and, I don't know, I have called, and his secretary said that he was out but she didn't say—I assumed that he was coming here, that someone was coming here."

The Assistant State's Attorney agreed:

"It is my understanding that Mr. Cocoros represented [appellant's] brother, and that's why it was postponed

---

2. Now Maryland Rule 4–271(a).

before. He had a conflict and couldn't represent both Carl Crowder and Brodie Crowder ...."

The administrative judge said that he "would have to give [Crowder] further opportunity to retain a lawyer under the circumstances if the case is to be tried on solid grounds, as far as his Constitutional right to have a lawyer is concerned."

The judge questioned Crowder with respect to whether he had funds to employ counsel. Crowder stated that he did. He was advised that if he did not he might possibly get the Public Defender to represent him. Crowder repeated that he was able to employ counsel. Kaplan interjected:

"For the record, your Honor, ask him in the event that he was [sic] granted a postponement, to come to my office with Mr. Taylor because I have to discuss the case with both of them, and, at that time, I will recommend a lawyer to him, and I assure the Court that by that Saturday he will have a lawyer, and, furthermore, I will give the Court a firm date."

The administrative judge, at the request of the State, advised Crowder of his rights under then Rule 723. Crowder indicated that he was 33 years of age and had a year and a half of schooling at Essex Community College. He waived his rights under Rule 746 and also waived his right to a speedy trial.

In response to a question from Kaplan, the Assistant State's Attorney indicated that Kaplan would have a conflict of interest if he were to represent Taylor and Crowder. Kaplan then said, "Then I'm out, okay."

Notice of a trial date of September 26 was filed on July 1. On August 30, Crowder appeared for rearraignment at the request of the State. He was advised of his rights under then Rules 723 and 731. He indicated that he had attempted to procure the services of Askew Gatewood, Esq., but had not secured his services at that time. The State handed him a card from the Public Defender's office.

On September 26, 1983, Crowder appeared for trial. He was asked if he had a lawyer. He replied that he did, Morris Kaplan. Kaplan was summoned from a nearby courtroom. He was asked if he represented Crowder in this case. He replied:

"That's not correct, Your Honor. I told him if I had been assured that there would not be a conflict then I would represent him. I have not received any money from him, and if I did then I would tell you I represent him. But if he gets a postponement, and that's up to Judge DeWaters, of course, because he is without counsel, and I would take a chance and enter my appearance."

The Assistant State's Attorney indicated there would be a possible conflict if Kaplan represented Crowder. Kaplan said:

"Let me say this, Your Honor. I don't think there is any conflict. The statements are exculpatory from what I gathered talking to him and talking to the police officers. If he gets a postponement I said I would take a chance and would enter my formal appearance and my word as you, Your Honor, —."

Kaplan was involved in a jury trial in Baltimore City and thus unable to go to trial on that day. The matter was referred to the administrative judge (DeWaters, J.) to consider a request for postponement.

Kaplan told the administrative judge:

"Mr. Crowder saw me yesterday and after discussing the matter with him, in my opinion, there was no conflict as between the two defendants. I spoke to the officers this morning, and they had taken a statement from each of the two defendants, but the statements were exculpatory. So, it would not be a matter of conflict, in my opinion.

"Well, now, I had not been retained by Mr. Crowder in the sense that I had received any monetary consideration, but if the Court is inclined to give a postponement—and I would like to say that this is a very serious case, your Honor—and even though he had been told to get a lawyer

and has not done so, he has made efforts to do so. I think that, in the interest of justice, that he should have a lawyer. I will take a chance, and even though I have not received any money, in order to accommodate the Court because I have embarrassed the Court to a degree this morning, I will enter my appearance. If Mr. Crowder doesn't pay me, then, I'm stuck. You have my word for it."

The administrative judge stated to Crowder:

"Now, Mr. Crowder, you understand that if this case doesn't go forward as to you today, that is it, as far as the lawyer is concerned. As a matter of fact, I wouldn't have any hesitancy in directing this case be tried as to you today without a lawyer, to be perfectly honest with you. I have no qualms about doing that, anyway, whatsoever. I think you've had plenty of opportunity to hire a lawyer, but the only reason I am not going to do that is because it seems like, to me, that for the convenience of the State's witnesses and everybody else concerned, and the Court, the Court's time and the jurors and everything, that it behooves the Court to try to set a time when this case can be tried with the witnesses just coming in here and getting it over with once and for all. Mr. Kaplan said he is going to enter his appearance for you if the case is postponed today, and, that way both defendants can be tried at the same time with the State's witnesses here. If I have you tried today, then, obviously, the State's witnesses are going to have to come back for Mr. Taylor's case, so they don't really, gain anything by staying here and forcing you to trial today, and that's the only reason, believe me."

October 5 was agreed upon as a new trial date and Kaplan stated, "I will enter my appearance." Crowder was again questioned as to whether he understood that he could not later complain that he had not been tried under the 180-day provision of then Rule 746. Crowder and Taylor were both questioned as to whether they desired a postponement. The record then is:

"MR. KAPLAN: Now, Mr. Crowder, I have discussed with you that there is a matter of a possible conflict, you understand that, do you not?

"MR. CROWDER: Yes.

"MR. KAPLAN: And we went over it very thoroughly, and we went over it again this morning with the officers in which each officer stated that you had given a statement and Mr. Taylor had given a statement, and I used the word, 'exculpatory statements,' which, really, means that, in your statement you said you were not involved in the participation or in any way with the offense, do you understand that?

"MR. CROWDER: Right.

"MR. KAPLAN: So, I want you to know that I am entering my appearance but if you feel still there is a possible conflict, even though you and I have agreed that there is not, then, you are satisfied to go ahead with me, is that correct?

"MR. CROWDER: That's correct.

"MR. KAPLAN: How about Mr. Taylor, same with you?

"MR. TAYLOR: Same.

"THE COURT: Mr. Crowder, I want to tell you the same thing, that you waived your rights under the hundred and eighty day rule on June 30th, 1983, and I want you to distinctly understand when you did that, you waived them for the future, and, so, that you can't come back at any time and have this case dismissed for non-compliance with the hundred and eighty day rule, and, especially, since you are the one getting the postponement here again today, do you understand that?

"MR. CROWDER: Yes, sir.

"MR. SMITH: Judge, I know you have heard enough, but there is a conflict. On January 13th, 1983, Brodie Crowder was interviewed in the lock up in this Court House by Detective Bruce McGrady (phonetic), and he stated orally that he was at the car with Carl and Taylor.

All three were drinking. He didn't want to get involved in the breaking and entering, so he left. If that doesn't pose a conflict between him and his co-defendant, I don't know what does.

"MR. KAPLAN: Well, then, he will have to get another lawyer, then, your Honor.

"THE COURT: He won't, because the case is going to be tried on the 5th.

"MR. KAPLAN: Okay.

"THE COURT: If the case is not tried on the 5th, if the case is asked to not be tried on the 5th because of the conflict, then I am telling you, gentlemen, what is going to happen is, Mr. Kaplan is going to represent one of you in front of one Judge, and the other one is going to go before another Judge and be tried without a lawyer, do you understand, because I will be sure that I have another Judge available in case the case splits, because I'm not going to have any more of this.

"MR. KAPLAN: Your Honor, at this point, even though he denies such a statement, there is a Bruton conflict, and I would, certainly, have to tell Mr. Crowder that he is going to have to get his own lawyer; I could not, in all good conscience, represent Mr. Taylor and Mr. Crowder at the same time.

"THE COURT: Well, then, Mr. Crowder is going forward today.

"MR. KAPLAN: I will get him a lawyer, though.

"THE COURT: No, Crowder is going forward today. Who is he going to be tried by?

"MR. SMITH: Judge Brizendine.

"THE COURT: Judge Brizendine. All right. As I said on the record a minute ago, he has had plenty of time to get a lawyer.

"MR. CROWDER: Judge, is there any way possible that I can still try to get a lawyer?

"THE COURT: You have had all the opportunity in the world to get a lawyer and you still don't have one."

Crowder represented himself throughout the trial which lasted two days. He was found guilty of burglary.

The State makes the point that on June 30 Kaplan was advised in Crowder's presence of a potential conflict and thus that Crowder should have known Kaplan was not available. It is apparent from the record, however, that up until the latter part of the hearing before the administrative judge on September 26 Kaplan perceived no conflict. Crowder, being untrained in the law, cannot be charged with knowledge of a conflict of interest not perceived by an attorney.

We do not agree with the Court of Special Appeals that Crowder was "manipulat[ing] the judicial system so as to delay the trial . . . ." He retained an attorney. A conflict of interest was found. His first attorney did not return any part of the fee he received. Crowder believed his first attorney was going to procure another one for him who would appear on June 30. At the June 30 hearing, Kaplan, who spoke on behalf of Crowder "in the goodness of [his] heart," suggested that Crowder go to his office with his co-defendant, Taylor, and at that time Kaplan would recommend a lawyer to Crowder. Kaplan "assure[d] the Court that by that Saturday he will have a lawyer, and, furthermore, I will give the Court a firm date."

It is apparent that on September 26 Crowder thought Kaplan represented him. He had talked with Kaplan the day before. At the hearing before the administrative judge Kaplan actually entered his appearance on behalf of Crowder before he bowed out when the State pinpointed the potential conflict of interest. Under all of the circumstances we cannot say that Crowder by his conduct waived his constitutional right to counsel.

JUDGMENT REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR PASSAGE OF AN ORDER REVERSING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND RE-

MANDING THE CASE TO THAT COURT FOR A NEW
TRIAL; BALTIMORE COUNTY TO PAY THE COSTS.