## STATE OF MARYLAND *v.* RENSHAW

[No. 40, September Term, 1975.]

*Decided November 6, 1975.*

260

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and O'DONNELL, JJ.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Ralph J. Moore, Jr.,* with whom were *H. Michael Hickson* and *Shea & Gardner* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This case arises out of appellee's conviction in the Circuit Court for Cecil County on charges of escape and assault and battery. On appeal, the Court of Special Appeals reversed and remanded the case for a new trial, citing the failure of the trial court to comply with Maryland Rule 719 c which deals with waiver of the right to counsel. *Renshaw v. State,* 25 Md. App. 270, 333 A. 2d 363 (1975). We granted a writ of certiorari to consider the question whether appellee was denied his right at trial to the assistance of counsel for his defense.

On May 14, 1974, appellee was charged in a two-count indictment with the crimes of escape and assault and battery allegedly committed on February 16th of that year while he was confined at the Cecil County jail. At his arraignment on May 22, appellee pleaded not guilty and elected to be tried by a jury. On that same date, Daniel H. Bathon, Esq., entered his appearance as appellee's attorney pursuant to his appointment by the Office of Public Defender.

When appellee appeared for trial on June 4, 1974, Mr. Bathon advised the court of his efforts on behalf of appellee prior to trial.[1] Mr. Bathon further advised the court that appellee had nevertheless expressed dissatisfaction with his representation, that appellee wished to enter a plea of not guilty by reason of insanity and to move for a change of venue, "[a]nd also [that] he would like to have new counsel appointed this morning."

After denying the requested change of venue and directing the clerk to enter the insanity plea, the court asked appellee why he desired to change counsel. Appellee replied that he

---

1. "MR. BATHON: Your Honor, as I was appointed approximately February 20, 1974 to represent Herbert David Renshaw, I have had two, four, six, eight, nine visits with the Defendant, your Honor, and I have had other calls to the State Police, to the State's Attorney, plus filing the preliminary motion, etc. My contacts with Mr. Renshaw have been fairly good. There was some question, your Honor, of his sanity and with the concurrence of the State's Attorney we sent him down to the Perkins Institution State Hospital and had him evaluated and a report was returned from that Institution on April 15th of 1974 saying that at the time of the commission of the crime they felt he was responsible for his act and knew what he was doing basically in a layman's language. . . ."

The prosecuting attorney also addressed the court on the matter of the pretrial representation by appointed counsel:

"MR. COLE: May the State say a few words?

"THE COURT: Yes, sir.

"MR. COLE: I will vouch for the fact that Mr. Bathon has been very zealous in obtaining information from the State. He has made — he said 7 visits to the jail, I would say he has talked to me double that time over the phone or in my office about the case. He filed a Motion for Discovery and Inspection. He got practically every thing the State has in this case, and not only that, he's gotten information we normally do not give him, such as statements made during the commission of a crime which are not usually discoverable. . . ."

thought Mr. Bathon had no "faith" in what he (appellee) had told him, that counsel believed him to be lying, and that he lacked confidence in Mr. Bathon. The court then denied the request for appointment of new counsel, saying:

". . . [W]hile the Court would in no sense require Mr. Bathon to — or require you to accept Mr. Bathon, require the Defendant to accept Mr. Bathon to represent him, the Court at the same time is not going to, and does not have to, and should not in all good conscience, delay the administration of justice because of a last minute decision, unannounced until this morning, that you want different counsel. What the Court will do is have Mr. Bathon stand by and you, if you desire to make any use of Mr. Bathon, that is entirely up to you. You do not have to use him. You can conduct your own case if you would like. We certainly are not forcing him upon you, but he will be available if you need him for anything and if you do not need him for anything, please just disregard his presence."

The court then explained to appellee the procedure to be followed in regard to the insanity plea and, when again asked by appellee whether new counsel would be appointed, repeated its earlier ruling. Following this exchange, the prospective jurors were brought into the courtroom, and the court then instructed appellee on the procedure for selecting a jury. Appellee replied: "Your Honor, I want to remain silent from here on out. As far as I am concerned, I do not feel that I am being helped by Mr. Bathon here . . . as my counsel, and *since I do not know the court procedures or anything about selection of jury, I am going to remain silent* and for whatever happens from here on out." (emphasis added).

After the jury had been empaneled and sworn, the prosecuting attorney made an opening statement to the jury. Mr. Bathon then asked appellee if he wished him to make an opening statement on his behalf. When appellee did not

respond to this inquiry, the court called him and counsel to the bench. There, this colloquy occurred:

> "THE COURT: Gentlemen, Mr. Bathon, I realize what an awkward position you are in and I will explain to the Jury after the case is all over that *Mr. Renshaw has elected to proceed without your help.* But, *if I were you, I would not do anything* unless Mr. Renshaw asks you to do it. . . ." (emphasis added).

The court then advised appellee of his right to cross-examine witnesses, to present witnesses on his own behalf, and of his right to testify in his own defense or to refrain from doing so without subjecting himself to an adverse inference.

Throughout the trial, the court addressed appellee directly, though Mr. Bathon was continuously present. The state called four witnesses, and at the conclusion of the direct examination of each witness, the court asked appellee whether he had any questions. In each case appellee remained silent. Likewise, the court received no reply when certain procedural steps were explained to appellee. Neither appellee nor Mr. Bathon made any motions, requested sequestration of witnesses, registered any objections, conducted any cross-examination, called any witnesses, presented any evidence, or noted any exceptions to the jury instructions.

Since no evidence of appellee's insanity had been presented, the court did not submit that issue to the jury. Appellee was found guilty under both counts of the indictment, and court was then adjourned until later that day. When the court resumed its session, Mr. Bathon was granted permission to confer with appellee. Having been authorized by appellee to do so, Mr. Bathon repeated an alleged confession for the record as part of his presentation of mitigating circumstances. The court then imposed concurrent sentences of 15 years for the assault and battery and 10 years for the escape.

In sum, the trial judge treated appellee's expression of

264

dissatisfaction with assigned counsel, his request for a change of counsel and his silence as a waiver of the right to counsel and an election to proceed in proper person. The Court of Special Appeals concurred in this, holding that appellee's rejection of his assigned attorney " 'indicates . . . [an] inclination to waive representation,' " but concluded that the trial judge should have complied with the requirements of Rule 719 c.[2]

We shall affirm the decision of the Court of Special Appeals, not because we think the trial court erred by allowing appellee to waive his right to counsel without first observing the requirements of Rule 719 c, but because in our opinion he had not waived and was instead denied his constitutional right to counsel.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Due Process Clause of the Fourteenth Amendment guarantees the same right to the assistance of counsel, including the right to the appointment of counsel in the case of the indigent defendant, in state criminal prosecutions. *Argersinger v. Hamlin,* 407 U. S. 25, 92 S. Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963).

---

2. Rule 719 c provides:

"*If,* at any stage of the proceeding, *an accused indicates a desire or inclination to waive representation,* the court shall not permit such a waiver unless it determines, after appropriate questioning in open court, that the accused fully comprehends: (i) the nature of the charges and any lesser-included offenses, the range of allowable punishments, and that counsel may be of assistance to him in determining whether there may be defenses to the charges or circumstances in mitigation thereof; (ii) that the right to counsel includes the right to the prompt assignment of an attorney, without charge to the accused, if he is financially unable to obtain private counsel; (iii) that even if the accused intends to plead guilty, counsel may be of substantial value in developing and presenting material which could affect the sentence; and (iv) that among the accused's rights at trial are the right to call witnesses in his behalf, the right to confront and cross-examine witnesses, the right to obtain witnesses by compulsory process, and the right to require proof of the charges beyond a reasonable doubt." (emphasis added).

Central to the cases dealing with the right to counsel is the recognition that the assistance of a lawyer is essential to assure a fair trial. *See Argersinger v. Hamlin, supra; Gideon v. Wainwright, supra; Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A.L.R. 357 (1938); *Powell v. Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527 (1932). Thus in *Powell v. Alabama, supra,* 287 U. S. at 68-69, the Supreme Court observed:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him."

The ordinary criminal defendant, being even less able than the "intelligent and educated layman" referred to in *Powell,* is in yet a more difficult situation if he undertakes to defend himself.

Consequently, because "[e]ssential fairness is lacking if an accused cannot put his case effectively in court," *Adams v. U.S. ex rel. McCann,* 317 U. S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268, 143 A.L.R. 435 (1942), and because it is unlikely that an accused will be able to present his case effectively without the assistance of counsel, a conviction cannot be allowed to stand where the accused is not represented at trial by counsel unless it be determined that there was an intelligent and competent waiver by the accused. *Adams v. U.S. ex rel. McCann, supra; Johnson v. Zerbst, supra; see Ware v. State,* 235 Md. 131, 200 A. 2d 664 (1964). To assure protection of so fundamental a right, courts indulge every reasonable presumption against waiver, *Johnson v. Zerbst, supra,* 304 U. S. at 464, and do not permit waiver to be presumed from a silent record, *Carnley v. Cochran,* 369 U. S. 506, 516, 82 S. Ct. 884, 8 L.Ed.2d 70 (1962); *Manning v. State,* 237 Md. 349, 352, 206 A. 2d 563 (1965). It must appear

affirmatively on the record that the accused was offered counsel but intelligently and understandingly rejected the offer. *Carnley v. Cochran, supra,* 369 U. S. at 516; *Manning v. State, supra.* Rule 719 c summarizes the requirements in Maryland for protection of the right to counsel where the accused indicates a desire to waive the right.

As the state readily concedes, at no time did appellee indicate a desire or inclination to waive representation. Nor did he express a desire to proceed in proper person. His sole request was that he be assigned new counsel because he lacked confidence in his appointed lawyer. In addition to his explicit statements in that regard, appellee's acceptance of appointed counsel's assistance prior to trial and after the verdict was rendered indicated a desire to be represented. *See United States v. Conder,* 423 F. 2d 904, 908 (6th Cir.), *cert. denied,* 400 U. S. 958 (1970). In *United States v. Fay,* 364 F. 2d 219 (2d Cir. 1966), the court reversed a conviction where the trial judge treated a request for new counsel as a waiver of the right to counsel. The defendant there was charged with attempted robbery, attempted larceny and assault, and counsel was appointed to represent him. After two prosecution witnesses had testified, appointed counsel informed the court that the defendant wished to "hire his own lawyer." The trial court, obviously perturbed by what it felt was an attempt by the defendant to delay the proceedings, rejected the request and informed the defendant that he had a right to dismiss his appointed counsel and continue alone. When the defendant replied that he only wished "to get . . . a paid lawyer" and that he did not want to proceed, the court took it upon itself to discharge his lawyer. On appeal, the court found that the defendant's insistence on obtaining a new lawyer was neither a waiver of his right to counsel nor an indication of a desire to proceed alone.

Likewise, in *Patton v. State of North Carolina,* 315 F. 2d 643 (4th Cir. 1963), the United States Court of Appeals refused to interpret the dismissal of counsel as a waiver of the right to counsel and reversed a conviction. There, when the defendant's privately retained counsel apparently

became convinced of his client's guilt and advised him to plead guilty, the defendant, protesting his innocence, was permitted by the trial court to dismiss his lawyer after being warned that his case would go to trial that day. Though the defendant was unable to obtain other counsel and continued to assert his desire to be represented by a lawyer, he was tried without counsel and convicted of armed robbery. As in *Higgins*, the court held that a waiver of the right to counsel could not be inferred from a request for new counsel, even where the defendant had dismissed previously retained counsel.

See also in this regard *United States v. Woods*, 487 F. 2d 1218 (5th Cir. 1973) (refusal to accept representation by court appointed counsel did not constitute waiver under the facts of the case); *Sawicki v. Johnson*, 475 F. 2d 183, 185 (6th Cir. 1973) (waiver could not be inferred from the defendant's dismissal of counsel); *United States v. Curtiss*, 330 F. 2d 278, 280 (2d Cir. 1964) (erroneous to require defendant to try his own case without a clear-cut statement that he wished to do so).

In sum, a request for different counsel is not a waiver of the Sixth Amendment right to the assistance of counsel.

To be sure, a criminal defendant does have a constitutional right to proceed without counsel if he intelligently and competently waives his right to counsel. *Faretta v. California*, 422 U. S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975). But the standard for waiver of the right to counsel remains unchanged. *Id.*, 95 S. Ct. at 2541. The record must show that the defendant is competent to waive the right to counsel,[3] and that he knowingly and intelligently has done so after being made aware of the advantages and disadvantages of self-representation. *Id.*

---

**3.** Although the report of Clifton T. Perkins Hospital indicated that appellee was competent to stand trial, it also stated that he showed "characteristics of schizoid personality disorder with antisocial features." Competency to stand trial and competency to make a knowing and intelligent waiver of the right to counsel are not necessarily the same. *See* Westbrook v. Arizona, 384 U. S. 150, 86 S. Ct. 1320, 16 L.Ed.2d 429 (1966); Massey v. Moore, 348 U. S. 105, 108, 75 S. Ct. 145, 99 L. Ed. 135 (1954).

Where the accused cannot waive the right to counsel, or has not effectively done so, the court must take steps to insure that the accused is represented by counsel even if he professes his unwillingness to have a lawyer. *McCloskey v. Director,* 245 Md. 497, 504, 226 A. 2d 534, *cert. denied,* 388 U. S. 920 (1967); *see United States v. Dujanovic,* 486 F. 2d 182 (9th Cir. 1973). So also in a case like the one at bar, where the accused fails to waive his right to counsel by making an unequivocal choice, but merely insists on a different lawyer, effective legal representation must be required by the court.

Nor could the court have interpreted appellee's silence as a manifestation of waiver. As we noted earlier, presuming waiver from a silent record is impermissible. *Carnley v. Cochran, supra.* In any event, appellee was explicit in stating that he would remain silent because he did "not know the court procedures"; thus, it would have been impossible to mistake his silence as indicating a waiver of the right to counsel.

Here, instead of requiring full legal representation for appellee, the trial court stated to appointed counsel, incorrectly in our view, that the accused had elected to proceed on his own and that counsel should do nothing unless so requested. The criminal defendant is entitled to more than the mere presence of someone with a law degree. *See United States v. Dujanovic* and *United States v. Curtiss,* both *supra.* He is entitled to genuine and effective representation. *McMann v. Richardson,* 397 U. S. 759, 771, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970); *Turner v. State of Maryland,* 303 F. 2d 507 (4th Cir. 1962); *Slater v. Warden,* 241 Md. 668, 673, 217 A. 2d 344 (1966). Acceding to the instructions of the court, appellee's counsel did not participate in the trial.[4] He made no opening statement or jury argument, nor any objections; neither did he cross-examine witnesses, proffer any kind of defense, note any exceptions to jury instructions or request sequestration of witnesses.[5]

---

4. We imply no criticism of appellee's counsel, who was merely acting at the direction of the Court.

5. The failure to object to any inadmissible testimony or to cross-examine was especially critical here. The state produced a witness

While it is true that *inadequacy* of counsel is not necessarily established where there is a failure to make an opening or closing argument, *Harriday v. State,* 238 Md. 75, 77-78, 207 A. 2d 629 (1965), a failure to make possible motions, *Fowler v. State,* 237 Md. 508, 515, 206 A. 2d 802 (1965), or objections, *Brown v. State,* 237 Md. 492, 498, 207 A. 2d 103 (1965), or a failure to produce defense witnesses, *id.,* 237 Md. at 498, such a course of conduct, to constitute adequate representation, must have been the result of a reasonable decision as to trial strategy. *See Smallwood v. Warden, Maryland Penitentiary,* 205 F. Supp. 325, 329 (D. Md. 1962); *Brown v. State, supra.* We express no opinion on the question whether there could ever be effective representation in a case where counsel remained totally silent throughout the trial. Suffice it to say that here the decision on the part of appellee's counsel to remain silent was not the result of any trial strategy, but rather was occasioned by advice of the trial court to remain silent. In this respect, the instant case is unlike *Guarnera v. State,* 20 Md. App. 562, 318 A. 2d 243, *cert. denied,* 272 Md. 742 (1974), on which the state relies exclusively for its contention that appellee was not denied the assistance of counsel. There, the silence of counsel was found to be part of a strategy aimed at preserving a claim of inadequacy of counsel because appointed counsel was admittedly unprepared and could offer little by way of a defense; also, the defendant, rather than the court, instructed counsel to remain silent.

---

(Wilson) to establish the legality of appellee's detention at the time of the escape. This witness testified that appellee was incarcerated for the "first time" on April 10, 1974, which was some two months after the date of the escape, February 16, 1974. To correct this defect, the state called a second witness (Beck). During their testimony, these witnesses managed to inform the jury not once but three times that appellee was confined for robbery, breaking and entering, grand larceny, assault, and possession of marijuana. Counsel not only failed to object to this thrice-related litany of crimes, but failed to obviate it by simply stipulating to the legality of the detention. *See* Jennings v. State, 8 Md. App. 321, 324-25, 259 A. 2d 547 (1969). Nor did he subsequently move for an appropriate limiting instruction, let alone move to strike or for a mistrial.

Furthermore, Wilson's unchallenged testimony that the purpose of the Cecil County jail was to "detain and incarcerate people for crimes *committed*" and the specification of charges virtually in the same breath may have suggested to the jury, improperly and erroneously, that appellee had been convicted of those crimes. (emphasis added).

Nor is this case saved from a finding of a deprivation of the right to counsel by the fact that the trial court would have permitted counsel to render effective representation had appellee requested it. Absent a waiver, effective representation must be afforded regardless of whether it is requested by the accused. *Carnley v. Cochran, supra,* 369 U. S. at 513-14. No waiver having been made here, the trial court should have ordered counsel to continue to render the fullest possible legal representation under the circumstances, with or without the cooperation of the defendant, bearing in mind, as the Supreme Court noted in *Gagnon v. Scarpelli,* 411 U. S. 778, 787, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973), that the lawyer who represents a criminal defendant is "bound by professional duty to present all available evidence and arguments in support of [the client's] positions and to contest with vigor all adverse evidence and views." The court erred, therefore, in advising counsel to remain silent unless requested by the defendant to speak. The court's explanation to appellee of certain procedural rights was insufficient to constitute the legal representation guaranteed by the Constitution. *Carnley v. Cochran, supra,* 369 U. S. at 510-11.

Nothing said here, of course, should be construed to grant a defendant the right to appointed counsel of his choice, and in this case the court quite properly denied the requested change. The defendant must accept counsel assigned by the court unless he can show adequate cause.[6] *United States v. Gutterman,* 147 F. 2d 540, 542, 157 A.L.R. 1221 (2d Cir. 1945); *English v. State,* 8 Md. App. 330, 335, 259 A. 2d 822 (1969). Further, it is "appointed counsel [who] manages the lawsuit and has the final say in all but a few matters of trial strategy." *Faretta v. California, supra,* 95 S. Ct. at 2529-30 n. 8.[7]

---

6. The court must, of course, make appropriate inquiries when a defendant claims he is not being adequately represented. *See* United States v. Woods, 487 F. 2d 1218, 1219-20 (5th Cir. 1973). Such an inquiry was made in this case.

7. As stated in the ABA *Standards Relating to the Prosecution Function and the Defense Function* 239-40 (Approved Draft 1971):

"In general . . . the power of decision in matters of trial strategy

We need not decide whether interference with an accused's right to counsel may be harmless constitutional error, or whether the right to counsel is one of those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U. S. 18, 23, 87 S. Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065, *rehearing denied,* 386 U. S. 987 (1967). No one spoke for appellee at any stage of the trial. Thus, there is no way of knowing whether there was weakness in the state's case or whether appellee had a perfect defense to the crimes charged. *Cf. Yopps v. State,* 228 Md. 204, 178 A. 2d 879 (1962). In the face of a record in such a state, we cannot say that the error was harmless beyond a reasonable doubt.

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by Cecil County.*

and tactics rests with the lawyer. . . . The lawyer must be allowed to determine which witnesses should be called on behalf of the defendant. . . . Similarly, the lawyer must be allowed to decide whether to object to the admission of evidence . . . whether and how a witness should be cross-examined . . . or whether to stipulate to certain facts . . . .

"Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance and an explanation to any but the most sophisticated client would be futile. Numerous strategic and tactical decisions must be made in the course of a criminal trial, many of which will be made in circumstances which will not allow extended, if any, consultation. . . . Because these decisions require the skill, training and experience of the advocate, the power of decision on them must rest with the lawyer . . . ." (citations omitted).