468 A.2d 124

**Edward Thomas MANN**

v.

**STATE'S ATTORNEY FOR MONTGOMERY COUNTY, Gary Reals and The Evening News Association.**

**No. 52, Sept. Term, 1983.**

Court of Appeals of Maryland.

Dec. 15, 1983.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender, George M. Lipman and Carol G.

Freeman, Asst. Public Defenders, Baltimore, on brief), for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee, State's Atty. for Montgomery County and by George R. Clark, Washington, D.C. (William S. Green and Pierson, Ball & Dowd, Washington, D.C., and David Macdonald, Rockville, on the brief) for appellees, Gary Reals and The Evening News Ass'n.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COUCH, Judge.

The issue involved in this case is whether the Circuit Court for Montgomery County erred in ordering that the defendant in a capital murder case, who had been judicially determined to be incompetent to stand trial because of mental illness and ordered committed pursuant to Maryland Code (1982), Health-General Article, § 12–104(b), could nevertheless be interviewed, with his permission, by the media and the prosecution. Under the circumstances present here we hold the trial court was in error.

In view of the narrow question before us a detailed recitation of the factual background of this case is unnecessary. Suffice it to say that Edward Thomas Mann, a former employee of IBM, stands charged in a 75 count indictment of multiple murder, attempted murder, assault with intent to murder and use of a handgun in the commission of a crime of violence. The State has filed notice of its intention to seek the death penalty. During the pretrial phase of the proceedings the trial court held a hearing to determine Mann's competency to stand trial. The trial court ultimately found Mann incompetent to stand trial and caused him to be committed to the Clifton T. Perkins State Hospital. Subsequently, the State's Attorney for Montgomery County filed, in the criminal case, a "Motion for Appropriate Relief"

seeking permission to interview Mann. Gary Reals[1] and the Evening News Association moved for leave to intervene for the purpose of also being allowed to interview Mann. From the record it appears that Mann wanted to be interviewed. Following a hearing on these motions the trial court ordered that the interviews could take place.

An appeal was dismissed by the Court of Special Appeals, and we granted certiorari in order to consider the important issue involved.

Prefatorily we observe that as no issue is raised in regard to the propriety of the procedure used here, we do not consider that issue.

### (1)

### *Appealability*

Initially, we must determine whether the order of the trial court appealed from is an appealable order. We find that it is. In a number of cases in recent years, we have had occasion to discuss the issue of appealability. *See, e.g., Cant v. Bartlett,* 292 Md. 611, 440 A.2d 388 (1982); *Montgomery v. State,* 292 Md. 155, 438 A.2d 490 (1981); *Clark v. Elza,* 286 Md. 208, 406 A.2d 922 (1979); *Estep v. Estep,* 285 Md. 416, 404 A.2d 1040 (1979); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.,* 284 Md. 86, 394 A.2d 801 (1978); and *Jolley v. State,* 282 Md. 353, 384 A.2d 91 (1978). In each of these cases we recognized that, as a general rule, to be appealable a judgment " 'must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding.' " *Cant v. Bartlett, supra,* at 614, 440 A.2d at 389 (citation omitted). We also recognized a corollary to the general rule, known as the "collateral order exception" engrafted to the final order requirement. As we stated in *Peat, supra:*

> "This doctrine, recently applied in the criminal context by this Court in *Stewart v. State,* 282 Md. 557, 571, 386 A.2d

---

1. A reporter for TV Channel 9, Washington, D.C.

1206, 1213 (1978), and *Jolley v. State, supra,* 282 Md. at 357, 384 A.2d at 94, was first articulated by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221 [1225–26], 93 L.Ed. 1528 (1949), in dealing with the appealability of an order denying a motion for the posting of security for costs under the federal appeals statute that is similar to section 12–301. The concept is narrow in scope, however, for, as the Supreme Court has articulated, if the order is to come within the 'small class' of cases included in the final judgment rule under *Cohen* it must meet four requirements: '[T]he order must [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue [, (3) be] completely separate from the merits of the action, and [ (4) ] be effectively unreviewable on appeal from a final judgment.' *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454 [2457], 57 L.Ed.2d 351 (1978) (footnote omitted); *see Cohen v. Beneficial Industrial Loan Corp., supra,* 337 U.S. at 546 [98 S.Ct. at 1225]." *Peat, supra,* at 91–92, 394 A.2d at 804.

■ More recently in *Sigma Reproductive Health Center v. State,* 297 Md. 660, 467 A.2d 483 (1983), Judge Smith, for the Court, made an exhaustive study of the appealability of interlocutory orders and the collateral order exception to the general rule of finality. In pertinent part Judge Smith stated for the Court:

"Since the *Cohen* decision the Supreme Court has refined the collateral order doctrine, but has applied it only to a relatively few issues of law. For example, in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 3454, 57 L.Ed.2d 351 (1978), the Court stated that to come within the collateral order doctrine, 'that order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment....'" *Id.* at 668, 467 A.2d at 487.

In the instant case those criteria are met by the order of the trial court. That order clearly determines a disputed ques-

tion, which obviously is an important issue. Furthermore, whether Mr. Mann is interviewed by the media or talks to the State's Attorney is completely separate from the merits of the criminal proceedings. Finally, in our judgment, the order would be effectively unreviewable on appeal from a final judgment in the criminal case since by that time it could well be too late to cure any damage done by whatever is revealed in the interviews. Accordingly, we hold the order to be in that "small class of cases included in the final judgment rule under *Cohen*," and is thus appealable. *Peat, supra* at 92, 394 A.2d at 804.

## (2)
### Merits

Turning our attention to the merits of the appeal, we hold that the trial court erred in ordering that Mann could talk to the State's Attorney and be interviewed by the media. Central to our reasoning is a recognition that some five months prior to the instant order (February, 1983) Mann had been judicially determined to be incompetent to stand trial [2] after several days of testimony from many psychiatrists and psychologists. In his oral remarks at that time the trial judge, after reviewing the evidence, stated:

"And the Court, therefore, concludes that the Defendant is suffering from a psychotic mental disorder known as paranoia, that he does have an understanding of the nature of the proceedings against him, but because of his delusional system he may not be able to rationally understand the object of the trial, and the object of the trial may be the statement rather than the determination as to his guilt or innocence on a 75 count indictment. The Court is also of the opinion the Defendant's delusional system completely impairs him from assisting in his own

---

**2.** Under Sec. 12–101(c), Health-General Article of the Maryland Code, a person is incompetent to stand trial if that person is unable (1) to understand the nature or object of the proceeding; or (2) to assist in one's defense.

defense. His mistrust, his feeling that the doctors, lawyers and the Court are a part of the conspiracy against him leads the Court to not only have a reasonable doubt as to his competency, but the Court is convinced that Edward Thomas Mann is not competent to stand trial and is dangerous."

Thus it is clear that the trial judge found Mann suffered from paranoia,[3] that he may not be able to understand rationally the object of the trial, and that Mann's delusional system completely impaired him from assisting in his own defense.

In July, 1983, the trial court held a hearing on motions filed by the State, Gary Reals, and the Evening News Association. These parties sought an order permitting them to interview Mann. We note that Mann acquiesced and in fact initiated these requests. No evidence was received or testimony taken at this hearing, which consisted of argument of counsel for the State, the news media, and the public defender who appeared for Mann.

The trial judge recognized that in February he had found that Mann was not competent to stand trial. However, he found it necessary to balance claimed conflicting constitutional rights[4] and concluded that there would be no prejudice to Mann in permitting the requested interviews. This conclusion was based on the widespread media coverage of the underlying offense, and the fact that the State "probably knows more about what happened on May 28, 1982 [the date of the offense] than the defendant." The trial judge also did not believe an insanity defense would be prejudiced. Significantly, the court stated that in view of his incompe-

---

**3.** Paranoia is a mental disorder characterized by the presence of systematized delusions often of a persecutory character, in an otherwise intact personality. STEDMAN'S MEDICAL DICTIONARY 1028 (5th ed. 1982).

**4.** The media's First Amendment rights and Mann's First, Fifth and Sixth Amendment rights.

tence, Mann "could not waive his *Miranda*[5] rights and, that any statement made to Mr. Mason [Assistant State's Attorney] would not, therefore, be admissible in court. . . ." In regard to the motion of Gary Reals the trial judge held that as Mann had the right to visitors under Maryland Code (1983 Cum.Supp.) Health-General Article, § 10–703,[6] and he wanted to talk to Mr. Reals, he should be permitted to do so. Again, it was found by the trial court that no prejudice was likely to occur.

The contentions of the parties on appeal may be succinctly stated:

(1) The public defender contends that an incompetent defendant may not validly waive his Fifth Amendment right against self-incrimination.[7]

(2) The State argues that it is premature to contend Mr. Mann is incompetent to waive any constitutional protection. It further contends that even if incompetence to stand trial in February equates with an inability to waive Fifth and Sixth Amendment rights in July, there has been no showing

---

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**6.** Section 10–703 of the Health-General Article (previously numbered as Section 10–702) states in pertinent part:
"(a) *In general.*—Each individual in a facility shall be entitled to receive visits:

\* \* \* \* \* \*

(3) During reasonable visiting hours that the facility sets, from any other visitor if the individual wishes to see the visitor.

(b) *Refusal to see visitors.*—If an individual refuses to see a visitor, the refusal shall be made a permanent part of the individual's record.

(c) *Restrictions.*—(1) If, for medically justified reasons, visits are restricted, the restriction and the reasons for the restriction shall be:

(i) Signed by a physician;

(ii) Dated as to when the restriction expires;

(iii) Made a permanent part of the individual's record; and

(iv) Reviewed every 30 days if the restriction remains in effect."

**7.** U.S. Const., Amend. V:
"No person . . . shall be compelled in any criminal case to be a witness against himself. . . ."

that Mann is still incompetent. Finally the State argues that any prejudice is speculative.

(3) Mr. Reals and The Evening News Association contend they have a right to visit with Mann under Sec. 10–702(a) of the Health-General Article.[8] Additionally, since no guardian has been appointed for Mann he should be able to exercise his First Amendment rights unfettered. Finally they contend that the First Amendment rights of these intervenors would be violated by a prior restraint.

(a)

In our view the overriding issue before us is whether a defendant in a criminal case, having been found incompetent to stand trial, thereby becomes incompetent to waive constitutional rights guaranteed by the Fifth and Sixth Amendments. Heretofore we have not had an occasion to address this issue directly. However, in *State v. Renshaw,* 276 Md. 259, 347 A.2d 219 (1975), we did observe that "[c]ompetency to stand trial and competency to make a knowing and intelligent waiver of the right to counsel are not necessarily the same." *Id.* at 267 n. 3, 347 A.2d at 225 [citing *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966); *Massey v. Moore,* 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954).]

In *Westbrook, supra,* the Supreme Court imposed a "protecting duty," *id.* at 151, 86 S.Ct. at 1320, upon the trial court. Although Westbrook received a hearing on the issue of his competency to stand trial, "there appears to have been no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel. . . ." *Id.* at 150, 86 S.Ct. at 1320. The Court remanded the case for further hearings to determine whether there had been an intelligent and competent waiver of counsel under *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Massey, supra,* the issue of incompetency and waiver of counsel arose as the result of a petition for

---

**8.** Effective July 1, 1983, Section 10–703(a).

habeas corpus. The petitioner alleged he was tried and convicted without the assistance of counsel and at a time when he was insane. The Supreme Court reversed the District Court which had dismissed the petition without a hearing. The Supreme Court stated:

"That may mean that the evidence to support the finding that petitioner was competent to stand trial with a lawyer was also sufficient to sustain the conclusion that he was competent to stand trial without a lawyer. It may mean that in the view of the District Court the two issues are the same. The present record leaves us in doubt. *One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel.* The difference in those issues and the importance of that difference to the petitioner make manifest that grave injustice might be done, if the finding in the earlier proceedings were allowed to do service here. On this record the question of petitioner's ability to represent himself without counsel remains undetermined." *Id.* at 108, 75 S.Ct. at 147 (emphasis added).

■ Thus it appears that a finding of competency to stand trial does not automatically result in a conclusion that an accused is also competent to waive substantial rights, such as the right to plead not guilty, the right to a jury trial, and the right to assistance of counsel. Support for this conclusion is found in *United States v. Davis,* 260 F.Supp. 1009 (E.D.Tenn.1966); *Pickens v. State,* 96 Wis.2d 549, 292 N.W.2d 601 (1980); and *State v. Bauer,* 310 Minn. 103, 245 N.W.2d 848 (1976).

■ The converse of this concept is presented by this case; i.e., does a finding of incompetency to stand trial also result in a conclusion of incompetency to knowingly and intelligently waive substantial rights relating to the criminal prosecution. Under the circumstances of this case we hold that it does.

Here, the trial court found that Mann was suffering from paranoia and, because of this illness, was completely im-

paired from assisting in his own defense and thus incompetent to stand trial. The record does not reveal that there had been any change in this adjudication.[9] Moreover, pursuant to Sec. 12–106 of the Health-General Article, the Department of Health and Mental Hygiene had filed no report to the court that Mann's mental condition had changed. Thus, it is patent that without any report from the Department, or further hearings by the court, the trial court was bound by its February finding of incompetency.

When the court's finding of incompetency to stand trial is viewed in conjunction with Mann's desire to be permitted to be interviewed by the media and the prosecution, it would appear that Mann is exhibiting his continued inability to assist in his defense. Stated otherwise, the very reason the trial court found Mann incompetent to stand trial appears to still be present and relevant to the proposed interviews. From the record before us there is no basis for the court to find that Mann was competent to consider the legal implications of his proposed actions. As the record reveals, no one, other than Mann himself, knows what it is he desires to say, either to the media or the prosecutor. Nevertheless, it may well prove to be devastating to the defense of the case, either as to guilt or innocence or to an insanity defense.

■ Furthermore, we believe it was appropriate for the public defender, without Mann's participation, to have opposed the motions at issue pursuant to § 104(d) which provides that counsel for one found to be incompetent to stand

---

**9.** Maryland Code (1982), Health-General Article, § 12–104(c) provides:

"(c) Reconsideration of competency and commitment.—(1) On suggestion of the defendant or on its own motion and subject to the limitations on frequency in § 7–705 or § 10–805 of this article, as the case may be, the court may reconsider whether the defendant is incompetent to stand trial.

(2) If the court orders commitment under subsection (b) of this section, the defendant may apply for release under § 7–705 or § 10–805 of the article. In computing the availability of review under these sections, as the case may be, the date of the commitment order shall be treated as a hearing."

trial "may make any legal objection to the prosecution that may be determined fairly before trial and without the personal participation of the defendant." Maryland Code (1982), Health-General Article, § 12–104(d).

### (b)

The media's motion for leave to interview Mann raises different issues. Appellees assert a First Amendment right to interview Mann. They argue that the freedom of press guarantees of the First Amendment would be abridged if the interview is not permitted. However, under the circumstances of incompetency to stand trial and Mann's commitment to the State facility, which are present in the instant case, we find *Saxbe v. Washington Post Co.,* 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974), controlling. In *Saxbe,* the Supreme Court was concerned with an analogous problem. There, the constitutionality of a Policy Statement of the Federal Bureau of Prisons, prohibiting interviews between newsmen and individually designated inmates of certain federal prisons, was challenged. The Court found it unnecessary to balance First Amendment guarantees.

"For it is apparent that the sole limitation imposed on newsgathering by Policy Statement 1220.1A is no more than a particularized application of the general rule that nobody may enter the prison and designate an inmate whom he would like to visit, unless the prospective visitor is a lawyer, clergyman, relative, or friend of that inmate. This limitation on visitations is justified by what the Court of Appeals acknowledged as 'the truism that prisons are institutions where public access is generally limited.'"

*Id.* at 849, 94 S.Ct. at 2814. (Citations omitted).

The Court held that the Policy Statement did not deny the press access to sources of information available to members of the general public. Therefore, there was no abridgment of the First Amendment since newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public.

In our view the circumstances present here are analogous. The facility to which Mann has been committed, Clifton T. Perkins State Hospital, is a maximum security facility for the care and treatment of the criminally insane who are considered dangerous either to themselves or others. Section 10–703 of the Health-General Article clearly provides who may be deemed visitors of an inmate, such as a lawyer, a clergyman, and any other visitor if the individual wishes to see the visitor, and it reserves to an inmate the right to refuse to see a visitor. The statute does not give the general public the right of visitation. Thus *Saxbe, supra,* is squarely on point.

█ We recognize that Mann has initiated the request for visitation but the public defender, his counsel, opposes the request. As Mann has been adjudicated incompetent to make this decision, we hold that the media has no right to the visitation as long as counsel for Mann objects to the interviews on his behalf.

While the trial court did not intend that Mann be held incommunicado, we disagree that the issue was whether anything Mann said would be prejudicial. Rather, we find the " 'protecting duty imposes [a] serious and weighty responsibility upon the trial judge.' " *Westbrook, supra* at 150, 86 S.Ct. at 1320 (citations omitted).

"[W]hen the mental competency of the defendant comes into question, it is incumbent on the trial court, independent of the issue of competency to stand trial, to conduct further hearings or inquiries into the competency of the defendant to make a knowing and intelligent waiver of his right[s]...." *State v. Bauer,* 310 Minn. 103, 245 N.W.2d 848, 859 (1976).

No evidence was heard by the trial judge at the July 1, 1983 hearing. In fact, he was not asked to readjudicate the issue of Mann's competency to stand trial. We reiterate that the findings of the trial judge as a result of the competency hearing included a finding that Mann suffered from paranoia, that he may not be capable of understanding

the object of the trial, and that his delusional system completely impaired him from assisting in his own defense.

Thus, because the trial court has not determined that Mann is now competent to stand trial and assist in his defense, we believe the trial court erred in ordering that Mann could be interviewed.

ORDER REVERSED. MONTGOMERY COUNTY TO PAY ONE–HALF COSTS; APPELLEES GARY REALS AND THE EVENING NEWS ASSOCIATION TO PAY ONE–HALF COSTS.