522 A.2d 970

**Robert Alan KACOUR**

v.

**STATE of Maryland.**

**No. 961, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

March 18, 1987.

Gary S. Bernstein (Rochlin and Settleman, P.A., on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County, Leon Ryan and Michael Pulver, Asst. State's Attys. for Baltimore County, on the brief), Towson, for appellee.

Argued before WILNER, GARRITY and ALPERT, JJ.

WILNER, Judge.

On February 17, 1987, following oral argument in this case, we entered a *per curiam* Order dismissing this appeal and ordering the mandate to issue forthwith. We now explain why we dismissed the appeal and why we did so in that unusual manner.

On the evening of December 23, 1985, appellant was stopped by a police officer and given four traffic citations. The citations charged him, respectively, with

(1) "Exceeding Max. Speed 47 MPH in 30 Zone," in violation of § 21–801.1 of the motor vehicle law (No. C 123709);

(2) "Fleeing & Eluding Marked Police Unit," in violation of § 21–904 of that law (No. C 123710);

(3) "Driving While License Cancelled, Revoked, Suspended, or Refused," in violation of § 16–303(a) (No. C 123711); and

(4) "Negligent Driving," in violation of § 21–901.1(b) (No. C 123712).

Each citation was on the Maryland Uniform Complaint and Citation form; each was fully completed, giving the date, time, and place of the alleged offense and the year, model, and license tag number of the vehicle; and each was signed by the officer.

On or about April 9, 1986, the case was transferred to the Circuit Court for Baltimore County by reason of appellant's request for jury trial. A month later, appellant filed two written motions to dismiss, one contending that Citations C 123709 and C 123710 were "duplicitous," and one contend-

ing that each of the citations failed to allege the requisite elements of the respective offense charged. At oral argument on the motions, appellant launched a broad attack on the Uniform Complaint and Citation form itself. Relying on *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981), and *Pedzich v. State,* 33 Md.App. 620, 365 A.2d 567, *cert. denied* 279 Md. 684 (1976), but never mentioning the later cases of *Williams v. State,* 302 Md. 787, 490 A.2d 1277 (1985), *Jones v. State,* 303 Md. 323, 493 A.2d 1062 (1985), or *State v. Chaney,* 304 Md. 21, 497 A.2d 152 (1985), *cert. denied* —— U.S. ——, 106 S.Ct. 824, 88 L.Ed.2d 796 (1986), he pressed his argument that none of the citations were valid in that they failed to allege all of the requisite elements of the respective offense charged.

The court denied the motion, whereupon counsel was somehow able to persuade the court that, as his argument was "jurisdictional" in nature and was not frivolous, he should be allowed to seek appellate review of the court's denial of the motion pursuant to Ch. K of the Maryland Rules.

It should be noted that the case was scheduled for trial that day. Once the motion was denied, a jury was ready to be called for *voir dire* and commencement of trial. Counsel proffered the notion, however, that he had a right under the Ch. K Rules to ask a judge of this Court to sign a writ of *certiorari* permitting appellant to take an immediate appeal from the denial of the motion. "It may take, as it did in another case ... a year to a year and a half to get it heard and then get a ruling on it," he said. At the court's insistence, he then had his client formally waive his right to a speedy trial and authorize his counsel to prepare a "petition" and search out an appellate judge willing to issue a writ of *certiorari.*

This hearing took place on July 18, 1986—a Friday. Counsel tells us that, over the ensuing weekend, he learned that *certiorari* was not available, and so, the following Monday—July 21—he filed a routine notice of appeal without attempting to obtain a writ of *certiorari.* Unfazed by

this change in approach, on July 24 the court entered an order staying all further proceedings pending a resolution of the appeal.

 The appeal is clearly not a proper one. An order denying a motion to dismiss a charging document is generally not immediately appealable because it does not constitute a final judgment in the case. *Raimondi v. State,* 8 Md.App. 468, 261 A.2d 40, *cert. denied* 256 Md. 747 (1970); *Williams and Burchett v. State,* 17 Md.App. 110, 299 A.2d 878, *cert. denied* 268 Md. 746, 755 (1973); *Wilson v. State,* 21 Md.App. 557, 321 A.2d 549, *cert. denied* 272 Md. 751 (1974). There is a very limited class of interlocutory orders entered in criminal cases that are appealable as "collateral orders," but, as made clear in *Sigma Repro. Health Cen. v. State,* 297 Md. 660, 668, 467 A.2d 483 (1983), and in *Mann v. State's Atty. for Montgomery Cty.,* 298 Md. 160, 164, 468 A.2d 124 (1983), to fall within that class the order "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, *and be effectively unreviewable on appeal from a final judgment."* (Emphasis added.) There cannot be even a pretense that the order appealed from in this case would be "effectively unreviewable on appeal from a final judgment," and, for that reason alone, it does not qualify as an appealable "collateral order."

Appellant's purported invocation of the Ch. K Rules on *certiorari,* as he now seems to recognize, is equally unavailing. Those rules, the Court held in *Kawamura v. State,* 299 Md. 276, 284, 473 A.2d 438 (1984), "were intended to implement the existing common law practice regarding certiorari *in the circuit court.* Accordingly, in cases brought under those rules, this Court has approved of certiorari *in the circuit court* as the appropriate means for *that court* to review *trial magistrate* proceedings...." (Emphasis added.)

Defense counsel was certainly familiar with *Kawamura,* for he cited it in his argument to the Circuit Court. The

problem is, he miscited it, offering it as authority for his ability to seek immediate appellate review. There is no way the case can be fairly read as providing any such authority. Even if there could be any doubt as to that, the doubt is dispelled by the Committee Note following the Ch. K Rules, which states as clearly as can be stated that "[t]he procedure provided by this Subtitle relates to certiorari at the trial court level *and not the Court of Appeals or the Court of Special Appeals."* (Emphasis added.)

We dismissed the appeal by *per curiam* Order because of our concern over the course this case has taken. Not only has an appeal been noted from a clearly non-appealable order, but the Circuit Court was persuaded to stay all further proceedings pending the inappropriate appeal. As a result, some very serious traffic charges that should have been disposed of promptly have been languishing for over a year, which seems to have been the underlying purpose of this maneuver. In *Raimondi v. State, supra,* 8 Md.App. at 476, 261 A.2d 40, Chief Judge Murphy characterized this kind of device—"the stopping of criminal trials by filing appeals from interlocutory orders"—as "distinctly odious." He continued:

> "If the accused in a criminal case could deprive the trial judge of jurisdiction to try and determine his case by taking an appeal from a nonappealable interlocutory order, then he would be vested with the power to 'paralyze the administration of justice in the [courts] by the simple expedient of doing what the law does not allow him to do, *i.e.,* taking an appeal from an order which is not appealable.'"

That is essentially what has occurred here, and it is wrong.